Chief Justice Hernández and Justice Wolf, Del Toro, Aldrey and Hutchison concurred.

---

## PEOPLE, PLAINTIFF AND APPELLEE, *v.* NIEVES, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in a Prosecution for a Violation of the Excise Tax Law.

No. 1577.—Decided January 31, 1921.

Decided on the grounds of the opinion delivered in the case of *People* v. *Miranda, ante,* page 65.

*Affirmed.*

Chief Justice Hernández and Justice Wolf, Del Toro, Aldrey and Hutchison concurred.

---

## PEOPLE, PLAINTIFF AND APPELLEE, *v.* RUIZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in a Prosecution for Breach of Peace.

No. 1561.—Decided January 31, 1921

BREACH OF PEACE—INFORMATION.—When the theory of the prosecution on an information for a breach of the peace is the use of offensive language consisting in a vulgar epithet and it is not alleged or proved that the insult was offered in a loud and boisterous manner in the presence of women or children, it must be held that the offense charged does not fall under section 368 of the Penal Code.

The facts are stated in the opinion.

*Messrs. O. M. Wood* and *M. F. Rossy* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Emilio Ruíz, the defendant and appellant in this case, was the major-domo of the Juanita Central and had under his orders a foreman who was arrested for assault and bat-

tcry.  After the arrest the said appellant spoke to Marcelino Romaní, the then Municipal Judge of Bayamón, with regard to the good character of the defendant.  This was done before the trial.  The trial of the foreman was had and he was convicted and sentenced to pay a fine of forty dollars.  In all probability the fine was a just one and we have nothing to do with this phase of the case.  Thereafter, on a certain night, the municipal judge of Bayamón was seated in a café in that town.  While seated there, Ruíz entered the café to buy a cigar, and, seeing him enter, the judge called the said Ruíz to him.  According to the defendant-appellant and at least one of the witnesses of the government, the defendant did not wish to come, but finally came on the insistence of the judge.  Apparently they were friends up to this time.  Whether or not Ruíz sat down at the table with the judge does not clearly appear, but in any event they engaged in conversation and all the witnesses are agreed that it was done quietly, although perhaps, as the affair developed, a little angrily.  They differed and quarreled over the disposition of the case of the foreman and the proof tended to show that Ruíz sharply, and probably unjustly, criticized the sentence of the municipal judge, but the court had a right to believe that he also called the judge a vulgar epithet, the exact nature of which it is not necessary to insist upon, inasmuch as the witnesses do not agree as to what was the exact word used.  The complaint charges one word and the prosecuting witness, the municipal judge, said it was another.  This slight variance is not made a matter of complaint on appeal as such.  The municipal judge caused the arrest of the defendant.  He was tried by information presented in the District Court of San Juan, adjudged guilty of a breach of the peace and sentenced to a month in jail.  The complaint is as follows:

"The *fiscal* charges Emilio Ruíz with the commission of a breach of the peace, a misdemeanor, in that on or about March 13, 1919,

and in Bayamón, which forms part of the Judicial District of San Juan, said Emilio Ruíz unlawfully, wilfully and maliciously disturbed the peace and quiet of Marcelino Romaní, Ricardo Vall Lloveras and Ignacio L. Torres, who were present, by his disgraceful and offensive behavior, addressing the first named such vile and offensive epithets as 'you are nothing more than a *huele bicho* (an obscene, offensive epithet), this being contrary to the law in such cases made and provided and against the peace and dignity of the People of Porto Rico."

Section 368 of the Penal Code is the only one applicable and it provides as follows:

"Every person who maliciously and wilfully disturbs the peace or quiet of any neighborhood or person, by loud or unusual noise, or by tumultuous or offensive conduct, or threatening, traducing, quarreling, challenging to fight or fighting, or who on the public streets of any city or village, or upon the public highways fires any gun or pistol, or uses any vulgar, profane, or indecent language within the presence or hearing of women or children, in a loud and boisterous manner, is guilty of a misdemeanor, and shall be punished by fine not exceeding two hundred dollars, or by imprisonment in jail for not more than ninety days, or by both fine and imprisonment, at the discretion of the court."

If the complaint be examined it will be seen that its sole theory is one of using offensive language consisting in a vulgar epithet. Section 368 covers only the use of vulgar, profane or indecent language in the presence or hearing of women or children in a loud and boisterous manner. Not only were these words not used in a loud and boisterous manner, but they were not pronounced in the presence of women or children. Hence, the crime denounced does not fall under section 368 of the Penal Code. See also *People v. Pabón,* 15 P. R. R. 198, where the word *"malcriado"* was used.

Under the Common Law of England it was no breach of the peace merely to use insulting language. 9 C. J. 388. Statutes have covered it in various States, but the only reference to it in our own statute is the one to which we have

referred, and the principle of *Expressio unius est exclusio alterius* is applicable. In Porto Rico there are no crimes unless defined by statute. Penal Code, section 5.

The facts tend to show that these two men had been friends; that the insulting language was uttered in a quiet voice. It was offensive and not really excusable. Defendant, however, sought no quarrel and was requested by the judge himself to come up to him. As the defendant was probably irritated by the conviction of his foreman, it was not a propitious moment, to say the least, for the judge to make him talk. By "peace" as used by the law in this connection is meant the tranquility enjoyed by citizens where good order reigns. 8 R. C. L. 284. It was probably more the dignity than the tranquility of the judge that was offended under the particular facts of the case. When a judge enters a café his rights are just as great and no greater than those of anyone else so far as a breach of the peace is concerned. He is protected by the law of contempt in certain instances, but where that law does not reach, his rights are the same as those of any other citizen. *People v. García,* 21 P. R. R. 156.

The judgment must be reversed and the defendant discharged.

*Reversed.*

Chief Justice Hernández and Justices Del Toro, Aldrey and Hutchison concurred.